UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTHONY ROTONDO and ANITA TSCHIDA,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS OF IDAHO,<br><br>Defendant. | Case No. 1:11-cv-00493-EJL-CWD<br><br>REPORT AND RECOMMENDATION |

# REPORT

## INTRODUCTION

Plaintiffs Anthony Rotondo and Anita Tschida, on behalf of her minor child Master Tschida,[1] filed a complaint against Defendant Blue Cross of Idaho ("BCI") alleging BCI has failed to pay for medically necessary services covered under their health insurance plans. Plaintiffs seek damages under the Employee Retirement and Security

---

[1] There is a dispute concerning Master Tschida's age. However, for the purpose of this motion, the Court will accept the representations made in the Complaint and refer to Ms. Tschida's son without using his name.

REPORT AND RECOMMENDATION - 1

Income Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (e) and (f), in the amount of $342,070.52 for wrongful denial of benefits and for injunctive relief. BCI has moved for dismissal of this action under Rule 12(b)(1) for lack of subject matter jurisdiction, or alternatively for a stay to await the outcome of a pending case filed in Iowa state court involving the same claims for nonpayment of benefits.

The Court conducted a hearing on February 15, 2012, at which the parties appeared and presented their arguments. Based upon the record, the parties' briefs, and a careful review of the applicable authorities, the Court concludes a stay is appropriate in this matter.

## BACKGROUND

Plaintiff Tschida's minor child and Plaintiff Rotondo are hemophiliacs.[2] Hemophilia is a life-threatening disease that requires the use of costly blood clotting factor treatment, called "Factor." Between November of 2008 and January of 2009, each Plaintiff was covered under a plan of health insurance issued by BCI. Plaintiffs collectively submitted six claims—four by Master Tschida and two by Plaintiff Rotondo—during this time period for Factor prescriptions, totaling $342,070.51.

Plaintiffs filled their six prescriptions at a specialty pharmacy, T. Zenon Pharmaceuticals, LLC dba Pharmacy Matters ("Pharmacy Matters"), an Iowa company licensed to ship medicines to patients in Iowa, as well as other states. Pharmacy Matters

---

[2] There is no evidence in the record of the relationship, if any, between Plaintiff Rotondo and Plaintiff Tschida.

had a Contract Pharmacy Agreement dated July 1, 2008, with Factor Health Management, LLC ("FHM"), another specialty pharmacy, located in Florida. Pharmacy Matters acted as a non-exclusive distributor of medicines for which FHM or its affiliates were the distributor.

In connection with dispensing medication to patients, FHM and its contract pharmacies, including Pharmacy Matters, receive an assignment from the patient for the purpose of collecting payment from the patient's insurer. The assignment provision states that the patient will be "liable for all charges incurred . . . for items . . . provided by FHM, FCS or its associated contract providers and that it is [the patient's] responsibility to pay any and all denials, deductibles, co-payments or share of costs that are left unpaid by my insurance carrier…" (Compl. Attach. 3, Dkt. 1-3.) Plaintiffs agreed to such an assignment.

Pharmacy Matters submitted the six claims to Plaintiffs' insurance carrier for payment. The claims were reviewed by Wellmark, Inc. ("Wellmark"), a BCI affiliate located in Iowa that coordinated payment for BCI. According to the provider agreement, Pharmacy Matters provided covered health products and services to BCI's insureds and submitted claims in accordance with BCI policy to Wellmark which, in turn, would submit the claims to BCI in the case of its Idaho insureds.

Plaintiffs allege that all services provided to them by Pharmacy Matters were "Covered Services" as that term is defined in the BCI plan, and that they were entitled under the plan to obtain their medications from the licensed provider of their choice,

REPORT AND RECOMMENDATION - 3

including Pharmacy Matters. Despite receiving pre-authorization for the services, Plaintiffs' claims have gone unpaid. Plaintiffs contend that if BCI does not reimburse them for their claims, according to the assignment provision Plaintiffs' signed with FHM, Plaintiffs will be liable to pay the invoiced amounts to Pharmacy Matters. Plaintiffs further assert that Pharmacy Matters has demanded payment from each of them. The letter Plaintiffs each received on November 5, 2010, indicated that Pharmacy Matters was "continuing to attempt to collect these amounts" from BCI, but advised Plaintiffs that if BCI continued to refuse to pay, Plaintiffs would be "responsible for the amounts reflected in the enclosed" invoices. (Compl. Attach. 7, Dkt. 1-8.)

BCI does not dispute the above facts, but rather adds to them. Apparently, Wellmark denied not only Plaintiffs' claims for reimbursement for Factor, but other claims submitted to it by Pharmacy Matters for other insureds. On May 1, 2009, Pharmacy Matters sued Wellmark for breach of contract in Iowa state court for over six million dollars (the "Iowa Case").[3] Among Pharmacy Matters' claimed damages are the six invoices that relate to Plaintiffs' claims for Factor in this case. The Iowa Case has progressed substantially, with well over 200 pleadings and extensive discovery. Trial is set to commence in November of 2012.

In the Iowa Case, Pharmacy Matters asserted that Wellmark improperly denied payment for Covered Services under its Services Agreement. Wellmark asserted various

---

[3] The Iowa Case is styled *T. Zenon Pharmaceuticals, LLC d/b/a Pharmacy Matters et. al. v. Wellmark, Inc., et. al.,* filed in the Iowa district court for Johnson County, Case No. LACV070675.

defenses and counterclaims, including that Pharmacy Matters failed to furnish Covered Services and sought claims for prescriptions for Factor that were not Medically Necessary. (Aff. of Collins Ex. D, Dkt. 6-6 at 10.) Wellmark asserts also that Pharmacy Matters violated the "anti-assignment clause of the Entity Services Agreement" between Wellmark and Pharmacy Matters by virtue of its relationship with FHM. (*Id.* Dkt. 6-6 at 11.) Wellmark additionally counterclaimed that the claims submitted to it were fraudulent. Accordingly, Wellmark contends it was justified in denying claims submitted by Pharmacy Matters for Factor.

The Agreement between Pharmacy Matters and Wellmark included a payment provision for Covered Services. Except as provided by the Agreement, Pharmacy Matters agreed to accept payment by Wellmark for Covered Services, and not bill any Covered Person for anything other than deductibles, coinsurance or copayments. However, Pharmacy Matters may seek payment "for services determined not to be Medically Necessary." (Aff. of Collins Ex. C Dkt. 6-5 at 11.) In addition, Plaintiffs' plans contain an anti-assignment provision which states that "BCI's right to pay an Insured directly is not assignable by an Insured . . . (Aff. of Ingram Ex. A, Dkt. 19.)

BCI alleges that Plaintiffs in this case have assigned their claims to Pharmacy Matters, and that Pharmacy Matters and FHM are represented by the same attorneys appearing for Plaintiffs in this case, in a coordinated effort to collect payment from Wellmark. FHM allegedly is paying the Plaintiffs' attorneys' fees and expenses. In addition to the Iowa Case and this matter, Pharmacy Matters has filed four other actions

REPORT AND RECOMMENDATION - 5

in federal district court on behalf of it and named individuals for nonpayment of claims by Wellmark related to Factor. The four other cases were filed in the Eastern District of Pennsylvania, the Southern District of Florida, the Western District of Pennsylvania, and the Eastern District of Michigan.[4]

In both the Florida Case and the Eastern District of Pennsylvania Case, the district court granted defendants' motions to stay on August 8, 2011, and February 9, 2012, respectively.[5] The Florida court in *Brown* concluded that the Iowa Case will, at some point, determine Pharmacy Matters' rights with respect to its contract with Wellmark, and that a decision in the Iowa Case would likely resolve the issues pending before the court. Similarly, in the Eastern District of Pennsylvania, the court in *Rhodes* determined that under its inherent authority to promote judicial economy, the case should be stayed in

---

[4] The cases are as follows: *Doreen Rhodes v. Independence Blue Cross*, Case No 2:11-cv-01881-JD (E.D. Pa.), *Brown v. Blue Cross Blue Shield of Florida, Inc.*, Case No. 9:11-cv-80390-DMM (S.D. Fla), *Griffis v. Highmark Blue Cross Blue Shield*, 2:11-cv-00263-JFC (W.D. Pa.), and *Luckey v. Blue Cross Blue Shield of Michigan*, Case No. 5:11-cv-11500-JCO-MJH (E.D. Mich). BCI submitted a motion requesting judicial notice of filings in two of the cases, *Rhodes* and *Brown*. (Dkt. 20.) The request for judicial notice is granted, as noted in note five.

[5] The Court takes judicial notice pursuant to Fed. R. Evid. 201(c) of the record in the four cases cited in note four, above. In *Rhodes*, the court on October 11, 2011, ordered Defendants Blue Cross and Wellmark to file and serve a joint motion for "transfer of this case to the civil suspense file pending a decision in the related litigation filed by Pharmacy Matters, Inc. against Wellmark, Inc." in Iowa state court. The court on February 9, 2012, issued an opinion granting the motion to stay the proceedings pending resolution of the Iowa case. (*See* Ex. A, Dkt. 20.) In *Griffis*, the court on August 31, 2011, granted a stay for thirty days, but ordered the parties to participate in a third party administrative review process to determine whether the plan would pay Griffis's claims, considering Griffis had allegedly failed to exhaust his administrative remedies under his health insurance plan. On October 17, 2011, the parties notified the court that the plaintiff's claims were paid. Thereafter, Pharmacy Matters, joined as a plaintiff, was voluntarily dismissed from the case. On February 1, 2012, the court indicated that a memorandum order was forthcoming dismissing the case as moot as against Defendant Blue Cross and Plaintiff Griffis, but it retained jurisdiction to decide a pending motion for attorney fees. Thus, the stay granted in *Griffis* was entered for a different reason than the reason advanced in this case. In *Luckey*, Defendant Blue Cross on October 26, 2011, filed a motion to dismiss or alternatively a motion for summary judgment. Blue Cross' position in *Luckey* is that Luckey exhausted his lifetime maximum benefit coverage while the claims for Factor from Pharmacy Matters were under review for fraud. *Luckey*, Dkt. No. 15. That motion was fully briefed as of January 12, 2012, and is ripe for the court's review. Thus, the *Brown* and *Rhodes* courts both decided to stay the action in favor of awaiting the outcome of the Iowa Case.

REPORT AND RECOMMENDATION - 6

favor of allowing the Iowa Case to potentially resolve the dispute between the named plaintiffs and the Blue Cross defendant.

Here, BCI also submitted materials indicating that it denied the claims under its contract with Pharmacy Matters as "Provider Liability," and its insureds, including Plaintiffs, do not owe the provider on the claim. (Aff. of Ingram ¶ 4, Dkt. 19.) Other than the claims submitted by Pharmacy Matters, BCI has paid all later claims for Factor submitted by providers to it on behalf of Plaintiffs. (*Id.* ¶5—6.) The Explanation of Benefits form supplied by BCI to Plaintiffs indicates that Plaintiffs owe the provider, Pharmacy Matters, $0.00, but does not state a reason. (*Id.* Ex. E, Dkt. 19-1.)[6] Plaintiffs filed an appeal with Blue Cross seeking the reason for the denial of the claims. On August 11, 2010, BCI indicated that the claims were denied for services provided by FCS Pharmacy because the service was performed by an "out-of-network provider" and was therefore not covered, and the information supplied did not substantiate "medical necessity for the services." (*Id.* Ex. G. Dkt. 19-1 at 35.)

## DISPOSITION

### 1. Motion to Dismiss

BCI filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), arguing lack of subject matter jurisdiction on the grounds Plaintiffs lack standing. BCI

---

[6] BCI filed this document under seal to protect the privacy of Plaintiff Tschida's minor child. However, BCI has not offered a reason why the document could not be filed with redactions. Nor did BCI file a motion to seal. The Court ordered BCI to review its filing and comply with Fed. R. Civ. P. 5.3 and Dist. Idaho L. Rule 5.3. (Dkt. 21.) The parties have done so, and filed redacted documents as appropriate.

contends Plaintiffs have no liability to Pharmacy Matters or FHM for the denied claims, and will never be obligated to pay the claims under various theories based upon the BCI provider agreement. The Court declines to determine the standing issue, because as explained below, a stay is warranted under the facts of this case.[7]

2. **Motion for Stay**

   A. **Applicable Standards**

The parties argue their respective positions advocating for or against a stay under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). *Colorado River* sets forth several factors relevant when deciding whether "exceptional circumstances" exist to stay a federal court action on the grounds that there is a similar action pending in state court in which the controversy can be resolved. *See* 20 Charles Alan Wright & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: FEDERAL PRACTICE DESK BOOK § 54 at 456–58 (6th ed. 2002).

The mere pendency of an action in state court does not require a federal court to refuse to hear an action or stay an action, and both actions may go forward until one results in a judgment. *Id. See also Colorado River*, 424 U.S. at 817. Federal courts have an "unflagging obligation . . . to exercise the jurisdiction given them," which in this case is based upon a dispute arising under ERISA, a federal statute. *Colorado River*, 424 U.S.

---

[7] Moreover, it is unclear on the record before the Court why BCI asserts Plaintiffs will never have liability to Pharmacy Matters. The Explanation of Benefits form supplied by BCI to Plaintiffs indicates Plaintiffs owe the provider, Pharmacy Matters, $0.00, but fails to state a reason. The August 11, 2010 letter to Plaintiffs indicated the services were performed by an "out-of-network provider" and further were not "medically necessary," and therefore were not covered services.

at 817. The circumstances permitting dismissal of a federal suit because a concurrent state proceeding exists are "considerably more limited" than circumstances appropriate for abstention. *Id*. at 818. The existence of a "substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993.)

In *Colorado River*, the United States Supreme Court set forth several factors for federal courts to consider, including (1) which court first assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *Id*. The United States Court of Appeals for the Ninth Circuit recognizes considerations added by *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 28 (1983). Those considerations are whether federal law provides the rule of decision on the merits and whether the state court proceedings are inadequate to protect the federal litigant's rights. *Travelers Indem. Co. v. Madonna*, 914 F.3d 1364, 1367 (9th Cir. 1990). Finally, the Court is to consider whether the litigants are forum shopping. *Travelers Indem. Co*., 914 F.3d at 1367.

No one factor is determinative, and the Court must take into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise. *Colorado River*, 424 U.S. at 818. Additionally, the balance is "heavily weighted in favor of the exercise of jurisdiction." *Travelers Indem. Co*., 914 F.3d at 1367. "Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 819.

REPORT AND RECOMMENDATION - 9

Within these parameters, an order staying the litigation is just as much a refusal to exercise federal jurisdiction as a dismissal. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28.

### B. Analysis

#### 1. *Exclusivity of Jurisdiction*

As an initial matter, Plaintiffs argue that, under *Silberkleit v. Kantrowitz*, 713 F.2d 433, 434 (9th Cir. 1983), and *General Motors Corp. v. California State Bd. of Equalization*, 815 F.2d 1305, 1308 (9th Cir. 1987), a stay pending resolution of a state case is not warranted when a claim is under the exclusive jurisdiction of the federal courts. Plaintiffs contend that their claims under ERISA for nonpayment of benefits under Section 1132(a)(1)(B) and for an injunction under 1132(a)(3) enjoy exclusive federal jurisdiction.

The Court disagrees in this case. Jurisdiction of Plaintiff's claim under Section 1132(a)(1)(B) for non-payment of benefits is vested concurrently in state and federal court. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 n.2 (9th Cir. 1984) *citing* 29 U.S.C. § 1132(3)(1). Thus, the holding in *Silberkleit* is inapposite. And while a claim asserted under Section 1132(a)(3) for an injunction does enjoy exclusive federal jurisdiction, *Silberkleit*, 713 F.2d at 436, the Court agrees with BCI's position that injunctive relief is inappropriately plead, and that, under the facts of this case, Plaintiffs do not seek relief other than payment of benefits.

Plaintiffs generally seek an injunction against BCI to preclude it from either denying a claim or placing a hold on a particular claim unless the claim is deficient as a

REPORT AND RECOMMENDATION - 10

matter of law, or BCI has actual evidence of fraud associated with the claim, and requiring compliance with ERISA for future claims. But Plaintiffs have not identified any wrongful conduct beyond the nonpayment of benefits to Plaintiffs or their assignees, and therefore an alternative claim for an injunction is inappropriate when Plaintiffs' claim for nonpayment of benefits would provide them complete relief.

The Ninth Circuit has held that plaintiffs asserting specific claims for damages under § 1132(a)(1)(B) or (a)(2) cannot also obtain relief under § 1132(a)(3). *Ford v. MCI Communications Corp. Health & Welfare Plan*, 399 F. 3d 1076, 1083 (9th Cir. 2005) (overruled on other grounds by *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011)). Had Plaintiffs' complaint suggested BCI engaged in self-dealing or biased claim practices, then it could be appropriate to pursue both monetary relief and injunctive relief. S*ee Ehrman v. Standard Ins. Co.*, No. C06-05454 MJJ, 2007 WL 1288465 *5 (N.D. Cal. May 2, 2007) (refusing to dismiss an alternative claim for injunctive relief at the pleading stage when the plaintiff had alleged other wrongful conduct that went beyond the mere wrongful calculation of benefits); *see also Wald v. Southwestern Bell Corp. Customcare Medical*, 83 F.3d 1002, 1007 (8th Cir. 1996) (denying leave to amend complaint to assert claim for injunctive relief under ERISA when the plaintiff sought no other relief other than nonpayment of benefits).

But the facts as alleged in the Complaint do not suggest or hint at any wrongful conduct on the part of BCI that could support a claim for injunctive relief. Rather, the facts supporting the claim for injunctive relief are that BCI violated its obligations under

ERISA by denying the claims, the same facts supporting Plaintiffs' claim for nonpayment of benefits. (Compl. ¶ 32, Dkt. 1.) Other than the six invoices for Factor prescriptions at issue, BCI has paid prior and later claims for reimbursement submitted to it for Factor for both Mr. Rotondo and Master Tschida. Moreover, Mr. Rotondo is not currently enrolled under a BCI plan such that he would be entitled to injunctive relief. Therefore, the claim for injunctive relief is not otherwise appropriate, and has no life independent of the claim for benefits. Consequently, under the facts plead in the Complaint, federal jurisdiction is not supported by the claim for injunctive relief. As for the first claim for relief, the Court may consider a stay under the holding of *Colorado River*.

### 2. *Colorado River Factors*

Although not an enumerated factor in *Colorado River*, Plaintiffs argue the lack of parallelism between the Iowa Case and this matter should persuade the Court not to stay this case.[8] Plaintiffs assert that the federal and state law causes of action are not the same as the claims asserted in the Iowa Case, the lawsuits seek different remedies, and the parties are different.

While exact parallelism may not exist, "it is not required. It is enough if the two proceedings are 'substantially similar.'" *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). The lack of complete parallelism between the parties and claims is not relevant when the interests of the plaintiffs in each suit are congruent, and a plaintiff's

---

[8] A number of other circuits consider the concept of parallelism, and in *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989), while not expressly adopting the idea, the Ninth Circuit discussed parallelism as a factor in the *Colorado River* analysis.

claim may be finally determined in the state court action. *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 696 (7th Cir. 1985). The court in *Lumen* further stated that "we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case…If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties. While *Colorado River* is considerably more limited in scope than the doctrines of res judicata and collateral estoppel, like them its impact cannot be obliterated by the stroke of a pen." *Id*.

In the instant case, the Court is confident that the Iowa Case may considerably narrow, or entirely eliminate, the need for further proceedings in this case. Plaintiffs' claim for denial of benefits asserts that BCI should have paid the six invoices for Factor identified in the Complaint. There is no dispute that the same six invoices are included in Pharmacy Matters' list of claims that it submitted to Wellmark, and for which Wellmark has refused to pay. If Plaintiffs were to prevail in this matter, BCI would be ordered to pay the six invoices, and in turn FHM would be paid for the drugs it dispensed. Similarly, if Pharmacy Matters prevails in its case against Wellmark, a BCI affiliate, the invoices would be paid and Plaintiffs would have no liability to either Pharmacy Matters or FHM. Accordingly, like the court in *Brown v. Blue Cross and Blue Shield of Florida, Inc.*, the Court finds the Iowa Case and this matter are parallel proceedings.

Turning to the *Colorado River* factors themselves, a majority of relevant factors support a stay in this case.[9] The desirability of avoiding piecemeal litigation is particularly relevant considering the Court's conclusion above. The correct evaluation of this factor involves considering whether "exceptional circumstances exist" that justify special concern about piecemeal litigation. *Travelers Indem. Co.*, 914 F.2d at 1369. In *Colorado River*, this factor tipped in favor of a stay out of the desire to avoid piecemeal litigation over state water rights and the existence of a forum for doing so in state court as a matter of federal policy. In this case, the exceptional circumstances concern the virtually identical nature of the claims, although asserted under different theories by different parties. Plaintiffs and Pharmacy Matters share a common interest. They both seek payment of the Plaintiffs' invoices for Factor by BCI, on the one hand, or its affiliate, Wellmark, on the other.

The sequence in which jurisdiction was obtained is relevant also. The Iowa Case began on May 1, 2009, more than two years ago, and extensive discovery has been completed. Trial is set for November 6, 2012. It is clear that the Iowa Case has progressed far more than this matter has, and therefore this factor favors a stay.

As for forum shopping, it appears Plaintiffs filed the federal court action for a second shot in the event the outcome is not favorable in Iowa state court. The Ninth

---

[9] Some of the factors are irrelevant. For instance, there is no "res" in control of the court, and therefore factor one, jurisdiction over the property, is not relevant because money damages are not the type of physical property referenced in *Colorado River. Travelers Indem. Co.*, 914 F.2d at 1368. Nor is the inconvenience of the federal forum particularly relevant.

Circuit has held that "forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers Indem. Co.*, 914 F.2d at 1371. Plaintiffs, by virtue of their choice of counsel, have been aware of the Iowa Case since its inception, yet waited more than two years to file a complaint under ERISA for payment of some of the same invoices involved in the Iowa Case. The history "creates the impression that Plaintiff[s] filed [their] federal action in pursuit of a more sympathetic forum. Such behavior strains the federal policy against plaintiff removal and forum shopping, and [cannot be tolerated]." A*llied Mach. Serv., Inc. v. Caterpillar Inc.*, 841 F. Supp. 406, 410 (S.D. Fla. 1993). This factor therefore weighs in favor of a stay.

The Court may stay an action "to ensure that the 'federal forum will remain open if for some unexpected reason the state forum does turn out to be inadequate.'" *Coopers & Lybrand v. Sun-Diamond Growers of Calif.*, 912 F.2d 1135, 1138 (9th Cir. 1990). However, keeping one's options open appears to come into play when a plaintiff's federal claims may be subject to dismissal by the state court, and would be precluded on statute of limitations grounds if they were not simultaneously filed in federal court. *See Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241 (9th Cir. 1989) (staying federal court action when the state court had dismissed the plaintiff's Section 1983 claim to avoid the risk that the plaintiff would be time-barred from reinstating the federal suit). Such is not the case here.

The final two factors consider whether federal law provides the rule of decision on the merits and whether the state court proceedings are inadequate to protect the federal litigant's rights. Those factors tip in favor of a stay as well. Although the Plaintiffs' claims are brought pursuant to ERISA, the Court would have to examine the underlying contracts at issue. Indeed, BCI has referred to the underlying contracts between it and its insureds, as well as the agreements between Wellmark, Pharmacy Matters, and FHM. Those same agreements are at issue in the Iowa Case. And Plaintiffs' claims for ERISA benefits seek analogous relief on indistinguishable facts. Thus, while ERISA may form a basis for federal jurisdiction, the decision ultimately will involve interpretation of the underlying agreements governing the relationships between BCI, Plaintiffs, Wellmark, Pharmacy Matters, and FHM, as the case may be. There is nothing to suggest that the state court proceedings will be inadequate to protect Plaintiffs' interest in having the claims they submitted to BCI paid. Pharmacy Matters and FHM have potentially more at stake, since its lawsuit involves not just Plaintiffs' invoices for Factor, but other invoices for Factor submitted to Wellmark for payment totaling more than six million dollars.

Finally, the Court has reviewed the decision in *Brown v. Blue Cross and Blue Shield of Florida, Inc.*, filed in the Southern District of Florida. Not only was the district court deciding the identical issue presented before this Court, but the opinion was well reasoned and persuasive. After carefully and thoroughly considering the *Colorado River*


factors, the court in *Brown* determined a stay was appropriate in favor of the Iowa Case.[10]
So, too, does this Court, and therefore recommends that a stay be granted.

## CONCLUSION

After consideration of the *Colorado River* factors, the Court concludes a stay is warranted. As a result of its recommendation, the Court declines to rule on BCI's motion to dismiss filed under Rule 12(b)(1).

---

[10] The parties appealed the decision to the United States Court of Appeals for the Eleventh Circuit. On February 6, 2012, the Court of Appeals affirmed the district court's decision in *Brown*, finding no abuse of discretion. (Ex. B, Dkt. 20.)

REPORT AND RECOMMENDATION - 17

# RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

Defendant's Motion to Dismiss, and in the Alternative Motion to Stay, (Dkt. 6) be **GRANTED IN PART.** It is recommended that this matter be **STAYED** pending the outcome of the parallel Iowa State Court Case, *T. Zenon Pharmaceuticals, LLC d/b/a Pharmacy Matters et. al. v. Wellmark, Inc., et. al.,* in the Iowa district Court for Johnson County, Case No. LACV070675. It is further recommended that the order include a provision that the Clerk of Court **CLOSE** this case for administrative purposes, but also provide that Plaintiffs may move to reopen this case within thirty (30) days after the conclusion the Iowa State Court case.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 626(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **March 02, 2012**

Honorable Candy W. Dale
United States Magistrate Judge